UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CELINA MUTUAL INSURANCE | ) | |
| COMPANY, a member of a pool of | ) | |
| companies known as Celina Insurance Group, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-45 |
| | ) | |
| JOHN WILLIAMS, SOUTH SIDE SERVICE, | ) | |
| INC. d/b/a SOUTHSIDE MARATHON, | ) | |
| JESSICA GOODWIN and SCOTT | ) | |
| GOODWIN, individually and as guardian and | ) | |
| next of friend of Jessica Goodwin, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Celina Mutual Insurance Company, a member of a pool of companies known as Celina Insurance Group ("Celina"), by counsel, for its Complaint for Declaratory Judgment against Defendants John Williams, South Side Service, Inc. d/b/a Southside Marathon, Jessica Goodwin and Scott Goodwin, individually and as guardian and next of friend of Jessica Goodwin, states:

## JURISDICTION AND VENUE

1.      This is a civil action for declaratory and other relief brought pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to determine a controversy between Plaintiff Celina and Defendants John Williams, South Side Service, Inc. d/b/a Southside Marathon, Jessica Goodwin and Scott Goodwin, individually and as guardian and next of friend of Jessica Goodwin, arising out of an insurance contract.

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action involves citizens of different states and the amount in controversy, without interest and costs, exceeds the value specified by 28 U.S.C. § 1332 ($75,000).

3.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because the Court has personal jurisdiction over Defendants John Williams, Jessica Goodwin and Scott Goodwin, whose residences are in this district, and over Defendant South Side Service, Inc. d/b/a Southside Marathon, which has its principal place of business in this district. Moreover, a substantial part of the events occurred in this district.

## PARTIES

4.    Plaintiff Celina Mutual Insurance Company is a corporation subject to Ohio's corporation laws and incorporated under the laws of the State of Ohio with its principal place of business in Celina, Mercer County, Ohio.  Ohio Rev. Code Ann. § 3941.01 *et. seq.* and primarily Ohio Rev. Code Ann. § 3941.26.  Thus, pursuant to 28 U.S.C. § 1332(c)(1), Celina is a citizen of the State of Ohio.

5.    Defendant John Williams is domiciled at 2013 Stoney Hurst Bend, Huntington, Indiana, and is a citizen of Indiana.

6.    Defendant South Side Service, Inc. d/b/a Southside Marathon ("Southside Marathon") is an Indiana corporation with its principal place of business at 602 Jefferson St., Huntington, Indiana. Pursuant to 28 U.S.C. § 1332(c), Southside Marathon is a citizen of Indiana.

7.    Defendant Scott Goodwin, individually and as guardian and next of friend of Jessica Goodwin, is a resident of Huntington County, Indiana, and is therefore a citizen of Indiana.

2

8.     Defendant Jessica Goodwin is a resident of Huntington County, Indiana, and is therefore a citizen of Indiana. Scott Goodwin and Jessica Goodwin are referred to together as the "Claimants."

9.     The Claimants are named as parties because they may claim an interest in the insurance policies issued by Celina to John Williams, and to bind them to the coverage determination.

## BACKGROUND

10.     Celina issued a Homeowners Policy to John Williams with a policy number of 7167480-0 and a policy period of September 29, 2014 through September 29, 2015 (the "Homeowners Policy"). An accurate copy of the Homeowners Policy is attached as Exhibit 1.

11.     Celina issued a Personal Auto Policy to John Williams with a policy number of 7167493-0 and a policy period of August 30, 2014 through August 30, 2015 (the "Auto Policy"). An accurate copy of the Auto Policy is attached as Exhibit 2.

12.     Celina issued a Personal Catastrophe Liability Policy to John Williams with a policy number of 7167483-0 and a policy period of September 29, 2014 through September 29, 2015 (the "Catastrophe Policy" and collectively with the Homeowners Policy and the Auto Policy, the "Celina Policies"). An accurate copy of the Catastrophe Policy is attached as Exhibit 3.

13.     On November 23, 2016, the Claimants filed a complaint against John Williams, Southside Marathon, Samuel E. Detamore and Sharon Detamore in Huntington County, Indiana Circuit Court under cause number 35C01-1611-CT-000659 (the "Underlying Lawsuit"). An accurate copy of the complaint in the Underlying Lawsuit is attached as Exhibit 4.

14.     In the Underlying Lawsuit, the Claimants allege that on or about December 28, 2014, Samuel Detamore negligently operated a vehicle, which caused the vehicle to leave the road and flip over multiple times. (Exhibit 4, Count I, ¶ 1).

15.     In the Underlying Lawsuit, the Claimants allege that Jessica Goodwin was a passenger in the vehicle driven by Samuel Detamore. (Exhibit 4, Count I, ¶ 2).

16.     In Count III of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon negligently patched and/or sold and/or placed into the stream of commerce and provided to Samuel Detamore and Sharon Detamore a used Goodyear tire (the "Tire") that was in an unreasonably dangerous and defective condition. (Exhibit 4, Count III, ¶ 3).

17.     In Count III of the Underlying Lawsuit, the Claimants allege that the Tire deflated and that its deflation may have contributed to the loss of control of the vehicle driven by Samuel Detamore. (Exhibit 4, Count III, ¶ 3).

18.     In Count III of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon negligently designed, produced and manufactured the patch that was on the Tire (the "Patch"). (Exhibit 4, Count III, ¶ 4).

19.     In Count III of the Underlying Lawsuit, the Claimants allege that the Patch created the unreasonably dangerous used Tire. (Exhibit 4, Count III, ¶ 4).

20.     In Count III of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon negligently failed to provide proper instruction for the safe use of the Tire. (Exhibit 4, Count III, ¶ 5).

21.     In Count III of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon negligently failed to provide reasonable and adequate warning of the unreasonable dangers of the use of the Tire. (Exhibit 4, Count III, ¶ 6).

22.    In Count III of the Underlying Lawsuit, the Claimants allege that due to the negligence of John Williams and Southside Marathon, the Claimants were damaged. (Exhibit 4, Count III, ¶¶ 7-9).

23.    In Count IV of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon are in the business of patching and/or selling used tires to the public and placing used tires in the stream of commerce in Huntington, Indiana. (Exhibit 4, Count IV, ¶ 4).

24.    In Count IV of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon sold or placed into the stream of commerce and provided the Tire with the Patch designed, installed and manufactured by John Williams and Southside Marathon in an unreasonably dangerous and defective condition to Sharon Detamore and Samuel Detamore and that John Williams and Southside Marathon are responsible in strict liability under I.C. § 34-20-1-1 et seq. (Exhibit 4, Count IV, ¶ 5).

25.    In Count IV of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon failed to exercise reasonable care in designing, installing and manufacturing the Patch and/or in providing the necessary warnings or instructions on the use of the Tire. (Exhibit 4, Count IV, ¶ 6).

26.    In Count IV of the Underlying Lawsuit, the Claimants allege that John Williams and Southside Marathon are strictly liable to them. (Exhibit 4, Count IV, ¶¶ 7-9).

27.    In Count V of the Underlying Lawsuit, the Claimants allege that the actions of John Williams and Southside Marathon were willful and wanton and in disregard of the safety of Jessica Goodwin and the motoring public. (Exhibit 4, Count V, ¶ 5).

28.    In Count V of the Underlying Lawsuit, the Claimants allege that punitive damages should be imposed against John Williams and Southside Marathon. (Exhibit 4, Count V, ¶ 6).

29.     The Underlying Lawsuit alleges that as a direct and proximate result of the negligence of John Williams and Southside Marathon, Jessica Goodwin sustained severe physical injuries and permanent physical and mental impairments, incurred doctor, hospital and medical expenses, suffered great physical pain and suffering, suffered great emotional pain and suffering, and will incur future medical expenses. (Exhibit 4, Count IV, ¶ 7).

30.     The Underlying Lawsuit also alleges that Scott Goodwin has incurred the loss of Jessica Goodwin's services, support, and companionship, has sustained the emotional and psychological impact of seeing her injuries, and will incur the burden of taking care of her in the future. (Exhibit 4, Count IV, ¶ 8).

31.     The Underlying Lawsuit also alleges that Jessica Goodwin is now mentally incompetent, and can no longer take care of herself, and as a result, her parent, Scott Goodwin, has been appointed as her guardian. (Exhibit 4, Count IV, ¶ 9).

32.     John Williams and Southside Marathon submitted a claim to Celina for defense and indemnity of the Underlying Lawsuit.

33.     On February 7, 2018, Celina sent correspondence to John Williams.  The correspondence stated that there is no coverage under the Celina Policies for the Underlying Lawsuit.

## Relevant Provisions of the Homeowners Policy

34.     The Homeowners Policy defines certain relevant terms as follows:

**DEFINITIONS**

* * *

**3.**  "Business" means:

   **a.**  A trade, profession or occupation engaged in on a full-time, part-time
          or occasional basis or;

6

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

\* \* \*

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in the care of any person named above;

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

**c.** Under Section II:

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without the consent of the owner; or

7

**(2)** With respect to a "motor vehicle" to which this policy applies:

    **(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

    **(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

(Exhibit 1, pp. 1-2).

35.    The Homeowners Policy provides liability coverage as follows:

**SECTION II – LIABILITY COVERAGES**

**A.**    **Coverage E – Personal Liability**

If a claim is made or suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.**    Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.**    Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

(Exhibit 1, pp. 15-16).

36.    The Homeowners Policy contains the following exclusion regarding liability coverage:

**SECTION II – EXCLUSIONS**

\* \* \*

**E.**    **Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

8

Coverages **E** and **F** do not apply to the following:

* * *

**2.** **"Business"**

    **a.**    "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

          This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

    **b.**    This Exclusion **E.2.** does not apply to:

        **(1)**    The rental or holding for rental of an "insured location";

            **(a)**    On an occasional basis if used only as a residence;

            **(b)**    In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

            **(c)**    In part, as an office, school, studio or private garage; and

        **(2)**    An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

(Exhibit 1, p. 16).

### Relevant Provisions of the Auto Policy

37.    The Auto Policy provides liability coverage as follows:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

A.   We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B.   "Insured" as used in this Part means:

1.   You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2.   Any person using your "covered auto".

3.   For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4.   For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

(Exhibit 2, p. 2).

38.   The Auto Policy contains the following exclusion regarding liability coverage:

**EXCLUSIONS**

A.   We do not provide Liability Coverage for any "insured":

\* \* \*

6.   While employed or otherwise engaged in the "business" of:

a.   Selling;

b.   Repairing;

c.   Servicing;

10

      **d.**    Storing; or

      **e.**    Parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (**A.6.**) does not apply to the ownership, maintenance or use of "your covered auto" by:

      **a.**    You;

      **b.**    Any "family member"; or

      **c.**    Any partner, agent or employee by you or any "family member".

(Exhibit 2, p. 3).

## Relevant Provisions of the Catastrophe Policy

39.    The Catastrophe Policy defines certain relevant terms as follows:

**DEFINITIONS**

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.  "We", "us" and "our" refer to the Company providing this insurance.  In addition, certain words and phrases are defined as follows:

1.    **"insured"** means you and also:

    a.    Any **member of your household**.  But with respect to **motor vehicles** to which this policy applies, a **member of your household** is covered only as follows:

        (1)    while using a **motor vehicle** owned by you;

        (2)    while using a **motor vehicle** not owned by you or any **member of your household** provided such use is with the reasonable belief that the person using it is entitled to do so; and

        (3)    the use of the **motor vehicle** is within the scope of the owner's permission.

    b.    Any person while using a **motor vehicle** or watercraft owned by, loaned to or hired by you or on your behalf with your permission and the use is within the scope of your permission.

11

c.      Any person or organization using or having custody of animals owned by you and with your permission, except a person or organization furnishing a service for a fee.

d.      With respect to aircraft chartered with pilot by you or on your behalf, any person using such aircraft or legally responsible for its use.

None of the following is an **insured**:

(1)     the owner or lessee of **motor vehicles** or watercraft loaned to or hired by you or on your behalf;

(2)     any person (other than you) employed or engaged in the **business** of selling, maintaining, sorting, parking, or mooring **motor vehicles** or watercraft.  Also any person or organization (other than you) with respect to their liability for the acts or omissions of any such person;

(3)     any person or organization (other than you, your household employees or agents or a **member of your household**) loading or unloading **motor vehicles** or watercraft;

(4)     the owner, pilot, crew member, or any person operating any aircraft chartered with pilot by you or on your behalf;

(5)     any aircraft or aircraft part manufacturer, sales, or maintenance organization, airport or hanger operator, their employees or agents with respect to any **occurrence** arising out of such operations.

2.      **"personal injury"** means:

a.      **bodily injury**, sickness, disease, disability or shock;

b.      mental anguish or mental injury;

c.      false arrest, detention or imprisonment, wrongful eviction, malicious prosecution;

d.      libel, slander, defamation of character or invasion of privacy.

* * *

4.      **"business"** means:

12

    a.    any trade, profession, occupation or enterprise other than farming;

    b.    any **insured** who regularly provides home day care services to a person or persons other than relatives and receives monetary or other compensation for such services, however, mutual exchange of home day care services is not considered compensation.

5.    **"occurrence"** means an accident, including continuous or repeated exposure to similar conditions resulting in **bodily injury** or **property damage** neither expected nor intended by the **insured**.

\* \* \*

8.    **"damages"** means the amount paid or payable in settlement of the loss for which any **insured** is held liable by:

    a.    court judgment; or

    b.    compromise involving our written consent.

All recoveries and salvage collected will be deducted from this amount.

**"damages"** do not include:

    a.    loss or legal expenses (such as attorney's fees and court costs);

    b.    salaries of employees;

    c.    office expense, incurred by any **insured**, us, or any underlying insurer.

9.    **"retained limit"** means the greater of:

    a.    the amount equal to the limits of liability stated for each underlying policy listed in the Schedule of Underlying Insurance in the Declarations or in the Schedule of Underlying Insurance of any Endorsement or Coverage Form attached to this policy plus the limits of any other underlying insurance collectible by the **insured**; or

    b.    the amount stated for "Retained Limit" in the Declarations as the result of any one **occurrence** not covered by these policies of insurance.

10. **"bodily injury"** means physical injury to a person caused by an accident. It includes required care, loss of services, and death resulting from the physical injury.

(Exhibit 3, pp. 1, 2).

40. The Catastrophe Policy provides liability and defense coverage as follows:

**LIABILITY COVERAGE**

We will pay for **damages** in excess of the **retained limit** which the **insured** shall become legally obligated to pay as **damages** because of **personal injury** or **property damage** resulting from an **occurrence**.

**DEFENSE COVERAGE**

When a claim is made against any **insured** which we cover, except for the **retained limit**, and which is not covered in the **insured's** underlying policies described in the Schedule of Underlying Insurance in the Declarations, or in any attached Underlying Insurance Endorsement or Form or any other underlying insurance collectible by the **insured**, we will:

1. defend any suit against any **insured**, even if it is groundless or fraudulent. And we will investigate, negotiate and settle on behalf of the **insured** any claim or suit as we deem expedient.

2. pay premiums for bonds to release attachments up to the limits of this policy. We will also pay premiums on appeal bonds and the cost of bail bonds. But we will not apply for or furnish any such bonds.

3. pay all:

    a. our expenses;

    b. costs taxed against any **insured** in any suit we defend;

    c. interest accruing on the **damages** in excess of the **retained limit** after entry of judgment until we have paid, tendered or deposited in court such part of the judgment which does not exceed our limit of liability.

4. pay all reasonable expenses incurred by any **insured** at our request, including loss of earnings (but not loss of other income) up to $100 per day.

We will pay for these expenses (except for claim or suit settlement payments we make) in addition to the applicable limit of liability of this policy. In any country

where we are prevented from carrying out this agreement, we will pay any expense incurred with our written consent.

The **insured** shall promptly reimburse us (except for defense settlement costs) for any amount of **damages** paid on behalf of the **insured** within the **retained limit** of liability.

(Exhibit 3, pp. 2-3).

41.     The Catastrophe Policy contains the following exclusions:

**EXCLUSIONS**

This policy does not apply to:

* * *

3.     any **business** activities or **business** property, including the rendering or omission of any professional service by any **insured**.  This exclusion does not apply to the ownership, maintenance or use of any **motor vehicle** or watercraft by you.

(Exhibit 3, p. 3).

***

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

**AMENDATORY ENDORSEMENT – PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

The following exclusion is added to the policy:

**EXCLUSIONS**

This policy does not apply to:

Punitive or exemplary damages, fines, costs, interest or penalties; or attorney fees as a result of punitive or exemplary damages, fines, costs, interest, or penalties.

(Catastrophe Policy at PC 00 17 05 12).

42.     The Catastrophe Policy contains other relevant provisions:

**LIMIT OF LIABILITY**

Our limit of liability is shown in the Declarations.  This is the maximum amount we will pay for all claims arising out of anyone **occurrence** regardless of the number of **insureds**, claims made or persons injured.

All **personal injury** and **property damage** resulting from anyone accident or from continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one **occurrence**.  There is no limit to the number of **occurrences** during the policy period for which claim may be made.

**POLICY PERIOD, TERRITORY**

This policy covers **occurrences** which happen only during the policy period, anywhere in the world.

**YOUR DUTIES AFTER A LOSS**

Upon the happening of an **occurrence** likely to involve us, written notice shall be given as soon as practicable to us or any of our authorized agents.  Such notice shall contain:

1.      particulars sufficient to identify the **insured**;

2.      reasonably obtainable information regarding the time, place and circumstances of the **occurrence** or injury;

3.      the names and addresses of the injured and available witnesses.

If the claim is made or suit is brought against the **insured**, the **insured** shall immediately notify us in writing.  Also, forward to underlying insurer and to us every demand, summons or other process received by the **insured**.

The **insured** shall cooperate with the underlying insurers as required by the terms of the underlying policies.  The **insured** shall cooperate with us and, upon our request, assist in:

1.      making settlements;

2.      conducting of suits; and

16

3.      enforcing any right of contribution or indemnity against any person or
         organization who may be liable to the **insured** because of loss covered by
         this policy or the underlying policies.

The **insured** shall attend hearings and trials and assist in securing and giving
evidence and obtaining the attendance of witnesses.

* * *

**OTHER INSURANCE**

This insurance is excess over any other valid and collectible insurance, except
insurance written specifically to cover as excess over the limit of liability that
applies in this policy.  Nothing shall make this policy subject to the terms,
conditions or limitations of other insurance.

**UNDERLYING INSURANCE EXHAUSTED**

If any underlying policies of insurance are exhausted by any **occurrence**, we will
assume charge of the settlement or defense of any claim against the **insured**
resulting from the same **occurrence**.

* * *

**MAINTENANCE OF UNDERLYING INSURANCE**

The policies referred to in the Schedule of Underlying Insurance in the Declarations
or in an attached Underlying Insurance Endorsement or Coverage Form shall be
maintained without alteration by you during the policy period except for any
reduction of aggregate limits due to payment of claims.

If there is no recovery available to you:

1.      as a result of your failure to maintain the underlying insurance; or

2.      as a result of insolvency of the underlying insurer; or

3.      by reason of your having breached the contract of underlying insurance;

the coverage of this policy shall apply in excess of the applicable limit of liability
specified in the Schedule of Underlying Insurance or in an attached Underlying
Insurance Endorsement or Coverage Form.

(Catastrophe Policy at pp. 1-6).

### Count I – Homeowners Policy
### Southside Marathon Not An Insured

43.     Celina incorporates the allegations in paragraphs 1 through 42 as if fully set forth herein.

44.     Southside Marathon does not fall within the definition of insured under the Homeowners Policy.

45.     Therefore, Southside Marathon is not entitled to coverage under the Homeowners Policy for the Underlying Lawsuit.

46.     Celina seeks a judicial declaration that Southside Marathon is not an insured under the Homeowners Policy, and therefore that Southside Marathon is not entitled to a defense or indemnity under the Homeowners Policy for the Underlying Lawsuit.

### Count II – Homeowners Policy
### Business Exclusion

47.     Celina incorporates the allegations in paragraphs 1 through 46 as if fully set forth herein.

48.     The Homeowners Policy excludes liability coverage for bodily injury arising out of or in connection with a business engaged in by an insured.

49.     John Williams is an insured under the Homeowners Policy.

50.     The bodily injury alleged in the Underlying Lawsuit and for which the Claimants seek to hold John Williams liable arises out of or is connected to Southside Marathon, which is a business engaged in by John Williams.

51.     Therefore, John Williams is not entitled to coverage under the Homeowners Policy for the Underlying Lawsuit.

52.     Celina seeks a judicial declaration that John Williams is not entitled to a defense or indemnity under the Homeowners Policy for the Underlying Lawsuit because the bodily injury alleged in the Underlying Lawsuit and for which the Claimants seek to hold John Williams liable arises out of or is connected to Southside Marathon, which is a business engaged in by John Williams.

**Count III – Auto Policy**
**Southside Marathon Not An Insured**

53.     Celina incorporates the allegations in paragraphs 1 through 52 as if fully set forth herein.

54.     Southside Marathon does not fall within the definition of insured under the Auto Policy.

55.     Therefore, Southside Marathon is not entitled to coverage under the Auto Policy for the Underlying Lawsuit.

56.     Celina seeks a judicial declaration that Southside Marathon is not an insured under the Auto Policy, and therefore that Southside Marathon is not entitled to a defense or indemnity under the Auto Policy for the Underlying Lawsuit.

**Count IV – Auto Policy**
**Business Exclusion**

57.     Celina incorporates the allegations in paragraphs 1 through 56 as if fully set forth herein.

58.     The Auto Policy excludes liability coverage for bodily injury for an insured while employed or otherwise engaged in the business of servicing vehicles designed for use mainly on public highways.

59.     There is a question as to whether John Williams is an insured under the Auto Policy.

60.    The allegations against John Williams in the Underlying Lawsuit are based on his employment or engagement with Southside Marathon, which is in the business of servicing vehicles designed for use mainly on public highways.

61.    The allegations against John Williams in the Underlying Lawsuit are based on his servicing the vehicle in which Jessica Goodwin was injured.

62.    Therefore, John Williams is not entitled to coverage under the Auto Policy for the Underlying Lawsuit.

63.    Celina seeks a judicial declaration that John Williams is not entitled to a defense or indemnity under the Auto Policy for the Underlying Lawsuit because the allegations against him arise out of his employment or engagement with Southside Marathon, which is in the business of servicing vehicles designed for use mainly on public highways.

**Count V – Catastrophe Policy**
**Southside Marathon Not An Insured**

64.    Celina incorporates the allegations in paragraphs 1 through 63 as if fully set forth herein.

65.    Southside Marathon does not fall within the definition of insured under the Catastrophe Policy.

66.    Celina seeks a judicial declaration that Southside Marathon is not an insured under the Catastrophe Policy, and therefore that Southside Marathon is not entitled to a defense or indemnity under the Catastrophe Policy for the Underlying Lawsuit.

**Count VI – Catastrophe Policy**
**Business Activities Exclusion**

67.    Celina incorporates the allegations in paragraphs 1 through 66 as if fully set forth herein.

68.     The Catastrophe Policy does not apply to any business activities by an insured.

69.     John Williams is an insured under the Catastrophe Policy.

70.     The allegations against John Williams in the Underlying Lawsuit are based on the activities of Southside Marathon, a business.

71.     Therefore, John Williams is not entitled to coverage under the Catastrophe Policy for the Underlying Lawsuit.

72.     Celina seeks a judicial declaration that John Williams is not entitled to a defense or indemnity under the Catastrophe Policy for the Underlying Lawsuit because the allegations against him are based on the Activities of Southside Marathon, a business.

### Count VII – Other Terms, Conditions, Exclusions, Limitations or Endorsements of the Policies

73.     Celina incorporates the allegations in paragraphs 1 through 72 as if fully set forth herein.

74.     Celina seeks a judicial declaration that there is no coverage under the Celina Policies for the claims against John Williams and Southside Marathon in the Underlying Lawsuit under any other terms, conditions, exclusions, limitations and endorsements of the Celina Policies that may apply.

WHEREFORE, Plaintiff Celina Mutual Insurance Company, a member of a pool of companies known as Celina Insurance Group, respectfully requests that the Court issue a judgment determining and declaring:

a.      The Celina Policies do not provide coverage for any of the claims asserted in the Underlying Lawsuit;

b.      Celina is not obligated to defend John Williams against the Underlying Lawsuit;

c.      Celina is not obligated to indemnify John Williams against the Underlying Lawsuit;

d.      Celina is not obligated to defend Southside Marathon against the Underlying Lawsuit;

e.      Celina is not obligated to indemnify Southside Marathon against the Underlying Lawsuit; and

f.      all other appropriate relief.


Dated:  February 23, 2018                    Respectfully submitted,

                                             _/s/ Anna M. Mallon_____
                                             Anna M. Mallon, Atty. No. 23693-49
                                             Ian P. Goodman, Atty. No. 30645-49

                                             CANTRELL STRENSKI & MEHRINGER, LLP
                                             150 West Market Street, Suite 800
                                             Indianapolis, IN 46204
                                             Phone:  (317) 352-3500
                                             Fax:  (317) 352-3501
                                             Email:  amallon@csmlawfirm.com
                                                     igoodman@csmlawfirm.com

                                             Attorneys for Plaintiff, Celina Mutual Insurance Company, a member of a pool of companies known as Celina Insurance Group